My next case is Softbellys, Inc. v. TY, Inc. 2022-11-46. Mr. Topek, is it? It is, Your Honor. Ty? Yes, that's correct. Good morning. May it please the Court. I'd like to focus primarily on the claim construction issues, and especially Ty's argument about the in-part language found in Section 3B of Ty's brief. And then if time allows, I have a few brief points on the NIDAC issues. Of course, the starting point in construing claims is their plain language. Here, the term is in part. Ty's construction would allow for something that forms an inner chamber in whole to form an in part, whole being the antonym of part. It's completely inconsistent with the plain language of that term. Turning to Section 3B of their brief, Ty now argues that in part does not modify the strip, or sorry, that does not modify the chamber, but instead it modifies the strip. So that a strip of fabric can form the entire inner chamber plus something else, and that is how they get to in part. And there's a number of problems with that argument. First and foremost, it was forfeited. Ty argued to the board that there can be two strips of optical fabric to form the chamber plus a non-optical strip somewhere else. They did not argue this single strip chamber. That's in Appendix 366 and in Mrs. Ryan's declaration at 2306. And this is not simply sort of, you know, expanding upon or slightly modifying what was argued below. It's completely inconsistent. It is a different argument entirely. And so the court really should not even be considering it. There's also no evidence that was presented that that configuration exists in OGAWA, which was the reference at issue. So... But just so I understand it, if we disagree with your understanding of the claim and conclude that there's nothing in the claim that requires the inner chamber to be composed of at least one other strip that's non-optical grade fabric, then does that result in an affirmance here? Correct. We need to win both arguments. We need to win the claim construction argument, and we need to win the NIDAC argument. Okay. So when the claim says, okay, we have an inner chamber and there's a strip that forms in part that inner chamber made of optical grade fabric, why does that preclude the other or any other strip of fabric from being also an optical grade fabric? Because then it would be made in a whole of strips that are optical fabric and not in part. I guess what I'm trying to get at is that the claim limitation seems to be focused that, okay, this inner chamber has got to be made up of some strips. But one strip, I'm telling you right now, has to be composed of optical grade, period. And I guess I don't understand just based on that limitation why that also is telling me, and by the way, no other strip of fabric that is part of the inner chamber can be made of optical grade fabric. It doesn't say it like that. So I'm just trying to understand why is there this negative limitation embedded in this limitation where it's really just focused on one of the strips and what is a feature of one of those strips and the feature it's calling out is that feature has to be optical grade. Why does that require any kind of understanding and commentary about the other strips that will make up the inner chamber? Because that interpretation would render in part meaningless. If the claim read at least in part, then I would agree that it would allow for the rest of the strips could also be optical grade fabric. But by saying in part, it necessarily means not in whole. Can I ask you, just as a follow-up to Judge Janssen, maybe the independent claim is the one that says in part. But we're dealing here with the dependent claims, right? And nothing in the dependent claim which introduces the non-optical fabric requirement requires the non-optical fabric form any other part of the inner chamber. Is that fair? Is that right? Well, you have to... That another of said strips of fabric, referring back to the phrase, strips of fabric sewn together to form a doll-like figure party be non-optical. Well, the provision we're relying on is in part, which is in both the, as you referred to, the originally independent claim and the dependent claim. There's now only one claim. The originally independent claim was canceled. At most, that could mean that you could have a chamber formed in part by optical grade fabric and in part by something else that isn't fabric. Now, there's no teachings in the patent that say anything about that. There's no embodiment that matches it. And there's no evidence that Ogawa teaches that either, that the tie refers to it. Perhaps it could be wood or metal or plastic. So in part, it has to mean something other than in whole. And even if they're correct about that, the rest of it doesn't have to be non-optical, right? I don't think they're correct because when you read the claim as a whole, it's talking about fabric. It's talking about two kinds of fabric that are mutually exclusive. If it's not optical grade fabric and it needs to be fabric, then it would necessarily be non-optical grade fabric. So when you read the claim as a whole, and when you look to the embodiments, and when you look to the purpose of that limitation, which the patent owner referred to in the re-exam at Appendix 1288, the purpose was cost savings, that you wouldn't use any more optical grade fabric than you would need to. And so, yes, could you put non-optical grade fabric somewhere else? You could. But it's inconsistent with the purpose that you mentioned to sort of make the whole thing out of optical grade fabric and then stick some piece of non-optical fabric elsewhere when the purpose of it is to reduce the cost associated with it. Okay, and I think this is maybe just a different version of the question Judge Chen was raising, which is just because it says impart, what prevents the rest of the inner chamber for being formed by yet another strip of optical fabric? Because it would then be formed in whole by strips of optical grade fabric. And that would remove impart. I mean, under that interpretation, you could remove the word impart, and that's where you would get. And so impart would be superfluous. There wouldn't be any, you know, it wouldn't serve any purpose. It also, I mean, there are different embodiments that are disclosed. The preferred embodiment was for optical grade mixed with non-optical grade in the inner chamber. Which matches into our read of this claim. And again, Tai's argument now is different. That's not their argument now. Their argument now is the whole strip. There can be one strip that forms the entire inner chamber. And so long as it also forms something else with it, then it's impart. This is their effort to move beyond just the dependent claim language and into the actual term impart. Because they need to explain what does impart mean then? If it's not in whole. And so there is no embodiment that they cite to that references that. Page 50 of their brief, I think they try to suggest that there are embodiments that do that. But when you look at them, they're not. All of the passages that they cite are to multiple strips forming an inner chamber. So what I'm still trying, I'm still struggling here. This limitation is about two things about a particular strip of fabric. Thing one is, one particular strip of fabric will impart form the inner chamber. So that tells us that the inner chamber is going to be made up of a second part. And then the second thing this limitation is telling us about this particular strip is that it's made of optical grade fabric. So I guess if I read it that way, then the focus of this limitation is about two features of just this strip in particular. And it's not about a commentary on the chamber itself. It's a commentary on the strip. The strip is going to contribute to forming the chamber. And but it's not the only thing that's going to form the chamber. And then secondly, the strip is made of optical grade fiber fabric. Right. So I guess what's wrong with what I just said there? And then necessarily, the limitation isn't saying anything else about what else forms the inner chamber in combination with said strip here. So the chamber is formed at least in part. Or sorry, the chamber is formed in part. Well, it says here the strip, right? The fabric strip in part forms the inner chamber. Right. Well, forms in part the chamber. So OK, we know that this particular fabric strip is in combination with something else forming the inner chamber. The characteristics of the strip are that it forms part of the inner chamber and is composed of an optical grade fabric, but only forms in part, which leaves you with something else that needs to form the rest of the chamber. Yep. Right. And so given the embodiment in the specification, the purpose of the invention being causating, the most natural read of that phrase is that the one strip, the inner chamber is formed by a strip of optical grade fabric, potentially more than one strip of optical grade fabric, but it is not in whole formed by optical grade fabric. To the extent there's any ambiguity here, we would look to the specification, we would look to the purpose of the limitation. And those things both point not to forming the entire inner chamber out of optical grade fabric. There's clearly a preference in the specification towards combining both and in not using unnecessary amounts of optical grade fabric. And that would allow, I mean, you would basically then be putting on a piece of non-optical grade fabric as an afterthought that doesn't really serve what the purpose of that limitation is. So that construction would be inconsistent with the purpose of that. I'm almost into my rebuttal time. Just briefly on NIDAC, the board said that it was silent. The board went on to cite Kenna Metal and use the word envisaging and envisioning. If what the board meant to do was a straightforward, this is just what one of skill in the art would understand, why would they have written the opinion that way? It would have been very straightforward to do that. The answer is because it is silent. It doesn't say anything about it. The evidence that they rely on from Ryan isn't interpreting that claim language. It's bringing in other material that perhaps could have been part of an obviousness analysis. But there was no such argument brought forth and there's no room to address that now. I mean, are we not free to say, well, there may have been some ambiguity in what the board said. It said silent and then at another point it talks about something in Ogawa. For us to say, forget Kenna Metal, we think there was enough here for a conclusion. Because you need to reverse or affirm on the grounds that the board relied upon. And because the board relied upon a Kenna Metal analysis, because they're finding that it was silent, is subject to substantial evidence review, then there is not any room to say, we can affirm on alternative grounds and say, we disagree about Kenna Metal, but we find that there was evidence under a more traditional anticipation analysis or under an... I mean, there was no obviousness argument based on this anyway. So there would be no room at all for even the board to have done that. Counsel, as you indicated, you're into your rebuttal time. I will give you three minutes for rebuttal. Thank you. Mr. Segrist. Your Honor, may it please the court. The board did a very straightforward analysis here. It didn't... I'm not so sure of that. Where did this Kenna Metal come from? So the board cited Kenna Metal for the proposition that a reference is read from the perspective... Where did it come from? It didn't come from you, right? No, we didn't cite Kenna Metal. So that just came up on its own? Perhaps, sua sponte? Yes, Your Honor, the board is... It just popped out of nowhere in the final written decision. The board can certainly cite cases other than what either party... Sure, but I'm just trying to get a lay of the land. Sure, and yes... Nobody said Kenna Metal. That's correct. In the briefing, in the hearing, and then all of a sudden, like, it just popped up out of a coffin. Kenna Metal. Yes, that's the case... I'm going to examine this under Kenna Metal. No, that's the case that the board cited for the proposition that a prior art reference, Hiragawa, is read from the perspective of a person of ordinary skill in the art. And that's all they cited it for. Wait, wait, wait, but they used the word silent in connection with Kenna Metal to say that the reference was silent on this limitation. I mean, they said that, right? They did, but that's not all that they said. It's on page 25 in our brief. We've got the full quote from the board's paragraph that cites this. And what they said is that it's silent, but our analysis doesn't end there. Because where a reference is silent, a reference doesn't include everything that a person of ordinary skill in the art already knows. That's assumed to be out there. You know, a reference on chemistry doesn't have to include a full freshman text on chemistry. That all of that is already assumed to be known. So the board here said, it's silent, but our analysis does not end there. That's what they cited Kenna Metal for. Because even if it does not expressly spell out the limitations, you look at what a person of ordinary skill in the art would know or understand... Were you construing silent to mean kind of ambiguous? That it doesn't directly say this, but a person skilled in the art would understand that's what it meant? Yes, I don't think ambiguous, Your Honor. I think that it's saying that you did not have to provide assembly instructions on a stuffed animal to a person of ordinary skill in the art and design. That a person of ordinary skill in the art would already know how you make one of these figures. And so it is silent on that. It didn't expressly spell out those details. But a person of ordinary skill in the art brings that knowledge with them when they read Ogawa. Yeah, but throughout the reasoning and this board opinion, the board keeps using the term envisage. And that's a word that comes directly out of Kenna Metal. And it's a code term that tells me that the board was looking at this anticipation analysis through the lens of Kenna Metal and through the idea of even though the reference doesn't expressly say something, a skilled artisan would envisage this silent limitation in the content of this reference. And that is not the way that the opinion, our court's opinion in Kenna Metal was using the term envisage. And so that's the concern I have here. Now, I understand your theory, your argument, which is, well, yes, it referred to Kenna Metal, but don't worry about that and don't look at that. And it was just really just a casual drive-by reference to Kenna Metal. And the reasoning here can stand on its own if you just rip out all references to Kenna Metal and the envisage term. I understand that, but... I don't think that's your argument, Your Honor, but please continue. I mean, to me, that's the only way that we could accept the reasoning here is if you rip out the references to Kenna Metal because the Kenna Metal discussion here is wrongheaded and a misapplication and a misunderstanding of our Kenna Metal case. So therefore, we're left with, okay, is there some way to construe what the board did here independent of any reliance on Kenna Metal and the term envisage? So, Your Honor, we're not saying you need to ignore the word envisage or ignore Kenna Metal. And yeah, I'm saying you do. Kenna Metal did not come up with the word envisage. That's not where that comes from. The word envisage comes from Enright Petering. Sixty years ago, the Court of Customs and Patent Appeals used that word to describe how, yes, a species can be anticipated by a genus if merely saying that genus, a person of ordinary seal would immediately envisage all of the members of the species. But aren't there other envisage decisions different from Petering? There are. There are others different from Petering. Kenna Metal was a little different from Petering. And NEDAC is an example of a case where envisage was misused. Because in NEDAC, the reference only disclosed the waves in a stationary frame of reference. It was very specific about that. And the board, in the NEDAC case, it said, well, a person of ordinary skill in the art would envisage the rotating frame of reference that's in the claims. Well, that you can't do. You can't look at something that is expressly not in the disclosure that the disclosure contradicts and say, well, I would envisage something else. That's a one-reference-obviousness analysis. But that's not what the board did here. The board used envisage in its analysis, and it used it interchangeably with the word understand. They were applying a conventional anticipation analysis where they look at what a person of ordinary skill in the art would understand or infer the reference discloses. They were looking at Ogawa to see what it discloses. I was concerned about this invocation, the sua sponte invocation of Kenametal by the board. You could still pivot to and affirm through the claim construction. Oh, absolutely. I mean, those are independent grounds. In our view, the board's analysis was correct. They could have cited any other case for this proposition. Why don't you pivot to the claim construction? Sure. And on the claim construction, I think page 7 in our brief has copies of the independent and the dependent claim. And to us, the claim construction is straightforward. The independent claim, which was canceled in the reexamination, says there's a plurality of strips of fabric. So at least two, maybe three, maybe four, maybe five, maybe something else. But it's an open-ended claim. It's a comprising claim. So this figure can be made of something other than these plurality of strips of fabric, as long as it's made of those. And then we've highlighted this in yellow on page 7. It says, one of those strips of fabric forms in part the interchambers. That's strip A. It's got a form in part the interchamber. Now, the word in part is just set off by commas there. Indefiniteness is not something that the board can consider. It's not something we argue below. But there's lots of different ways that could apply. But it only applies here to that one strip of fabric that's called out, the recited strip, strip A. That has to form in part the interchamber. And it has to be optical grade. The rest of the interchamber can be made of anything, any of those other strips of fabric, any other material. And it's still within the scope of the claim because it uses a comprising language. The rest of the interchamber could be that optical grade strip of fabric tied onto a plastic handle or a piece of wood or anything, glass. So then that claim got canceled in the reexamination because there was a reference which showed the entire figure made out of this optical grade, right? And so this language that says formed in part of optical grade fabric, the board in that reexamination 20 years ago held that, well, that would read on this figure that's made entirely out of optical grade fabric, which clearly shows that in part doesn't mean that they can be made entirely out of optical grade fabric. And their specification also says the figure can be made entirely out of optical grade fabric. What they added in the reexamination in these claims 15 and 16 is just that another one of these plurality of strips, this is strip B, the second recited strip, that has to be non-optical grade. But unlike the optical grade, they didn't say where it has to be on the figure. It can be anywhere. It can be used to form part of the interchamber. It can be used for anything else. Their example figure is a little mouse. It could be the ears on the mouse. It could be the tail on the mouse. It could be the appendages. It doesn't have to form the interchamber because that's not what the claim says. And even though there's a preferred embodiment in which it does form part of the interchamber, sure, it can do that, but the claim doesn't require it. So the claim reads on Ogawa, even if you think that for some reason Ogawa has this hidden structure that their expert, Dr. Adner, says it has this secret wall in between the white part and the gripped body. But even under that, this claim would read on Ogawa and it is still invalid. So yes, to answer your question, you can definitely affirm on the basis of under a correct claim construction, the claim does not require that the recited non-optical strip of fabric form any part of the interchamber. That's just not part of the claim. Is there any co-pending litigation here? There is. There is a lawsuit filed at the Northern District of Illinois, which was stayed pending the IPR and I think the stay is still in place. Same claims as here or a variation of these claims? No, it's the same re-examination certificate patent. So claims 15 and 16 are the only claims that are out there. That suit was filed after the patent had expired and of course the IPR was filed after that. To finish the question, this is an expired patent, right? It is, Your Honor. This claim construction issue is so straightforward. Why did the board dodge it? You know, I don't know that the board was dodging it. I think that from the board's perspective, the factual information was just so persuasive. It was absolutely clear to the board that a person of ordinary skill in the art would understand how you make one of these figures and there was a lot of evidence about that. The Elgato reference itself is evidence of that. Ms. Ryan's testimony was a lot of evidence about that and she has 26 years experience in design of these types of figures and she's taught courses on it. Even Dr. Adener's own testimony in his deposition confirms that this is how a person of ordinary skill would understand these references. His testimony is on page appendix 2378 and I think it's telling because the question he was actually asked was, is it fair to say though that you don't consider yourself an expert in plush toy design? That was the question that was asked because Dr. Adener's really an expert in textile engineering and before the board, there was a lot of emphasis on whether the cloth and the white part was optical grade. That's not an issue on appeal but that was one of the issues before the board that they were addressing. And so the question was asked to Dr. Adener but you may be an expert in textile engineering but you're not an expert in plush toy design, are you? Well, his answer to that is illuminating because he says that he has some familiarity with this, probably not really his area of expertise, but he goes on to describe how you make these things. And his description is exactly what Ms. Ryan had said and exactly what the board describes. You take the two pieces of fabric, you sew them together first and then you fill them with the material. And so when Ogawa says something is sewn and it's filled, it's not describing manufacturing stuff. It's just describing the figure that was depicted there. And in that figure, you've got this white part on the bottom, you've got the body grip on the top and when you look and you describe it- There's a portion of Ogawa though that talks about something like a grip body and then a white part. Yes. And then there's some language in there that could be read as saying you fill up the grip body and then you fill up the white part and that makes it almost sound like, well, maybe these are two different little containers that you take care of independently. And then after you finish them off, you stitch them together. And that is how- And so that's really the debate, not what one of ordinary skill in the art would do to manufacture a stuffed toy. That's, I mean- That's not a different question. That's outside what is really going on and trying to confront the language of Ogawa and trying to discern what is Ogawa really trying to say when it talks about these two independent things called a grip body and a white part. So, Your Honor, Ogawa begins on appendix page 2136. And that's not really a different question because when you look at Ogawa and you try to figure out what it's trying to say, you have to do that from the perspective of a person of ordinary skill in the art. Sure, but you've got to wrestle with the language. You do. You've got to wrestle with the text and you've got to say, okay, even though the text seems to be talking about two different things here, let me tell you why it's really just two components of one thing that are unfinished until they are stitched together. Okay, and when you look at it with the understanding of a person of ordinary skill in the art, you have to look at the language that was used and what does it mean. Now, it does not say stitch it together. It does not say fill it up. It uses the word, you know, it is filled. And it uses the word, it is stitched together. You know, that's how it was described. And the reason it's doing that is it never says steps. It never says an assembly process. It's describing the structure of the figure, which includes the stitching, includes the filling, and both of the top half and the bottom half are filled in the thing that's depicted. I see I'm out of my time. Thank you. Thank you, counsel. Mr. Topic has three minutes for audience to visit. Thank you. I was hoping to just address some of the claim construction points that counsel made. First was reliance on the comprising nature of the claim. Is this court held in spectrum versus sterile? Comprising is not a weasel word in which to abrogate claim limitations. And essentially relying on comprising to say impart can mean in whole is doing exactly that. It's rendering, it's abrogating the meaning of impart. The next point I wanted to make was about the dependent claim slash independent claim and what happened in the re-exam. It's 1297. The patent owner explained new independent claim 15 emphasizes that the fabric material other than the optical grade material is not optical grade. So it would not be unheard of for an applicant or a patent owner in a re-exam to make more clear what was believed to be already contained in an independent claim. It's simply providing more clarity and certainty so that the examiner feels more comfortable going forward with allowance. And so by merely emphasizing that the fabric other than optical grade material is not optical grade, it's not, it doesn't distinguish the dependent claim from what was originally the independent claim. And of course, the presumption about differences between dependent and independent claims can be overcome if the circumstances suggest a different explanation or if the evidence favoring a different claim construction is strong. That's Liebel-Farsham versus Medrad. And that's what we have here. The purpose of this limitation was to reduce costs. The interpretation that would allow you to just stick a piece of non-optical grade fabric anywhere is not consistent with any embodiments. It's not consistent with what the purpose was. And I did not hear counsel try to defend the new construction for, or even address the new construction for IMPART, which is not that there is two optical grade fabrics comprising the chamber plus something else somewhere else. It's that IMPART does have meaning and that it reads instead on the strip and not on the chamber. And there's no evidence that Ogawa teaches that. So when- The appellee doesn't need that argument to prevail on a claim construction bill, correct? Well, that's the construction that they're putting forward to explain IMPART. I mean, they otherwise only address the sort of the dependent versus independent in the fact that the limitation on non-optical grade doesn't specify where it has to go, but they still have to deal with IMPART. But just so I understand it, their position all along has been the inner chamber is made up of more than one strip. One strip has to be optical grade fabric. But the other strip or strips can be made of anything. That is not how I understand their claim construction on appeal to be. Their claim construction on appeal is, this is section 3B of their brief, is- Well, if that's how we understand the claim, then we still are in the same place with an affirm. If you- Well, if you were to revert to their original construction that there could be two strips making up the fabric, both optical grade, then we still have our arguments that if it's formed in whole by strips of optical grade fabric, it's not formed in part by optical grade fabric. Right. That argument is still there. That argument, I'm saying, if we were to understand the claim in that way, that would result in an affirmance. If you found that IMPART could be satisfied by multiple strips of optical grade fabric, then you would affirm. Correct. Thank you, counsel. Thank you. Case is submitted.